United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

U.A. LOCAL 342 JOINT LABOR -
MANAGEMENT COMMITTEE, et
al.,

                Plaintiffs,

    v.

AIRTEKS MECHANICAL
SERVICES, INC., a California
Corporation, and JEROME
BOHLAND,

                Defendants.
_____/

and related case
_____/

No. C-04- 2531 SBA (WDB)
No.  C-05-1758 SBA (WDB)

**REPORT AND
RECOMMENDATION RE
PLAINTIFFS' CONSOLIDATED
MOTIONS FOR DEFAULT
JUDGMENT**

Plaintiffs are U.A. Local 342 of the United Association of Journeymen and
Apprentices of the Plumbing and Pipe Fitting Industry ("union"), various fringe
benefit trust funds established for the benefit of union members, and the trustee of
those fringe benefit trust funds. *See*, Complaint, filed June 24, 2004, and First
Amended Complaint ("FAC"), filed December 22, 2004, in C04-2531; Complaint,
filed April 27, 2005, in C05-1758.  Defendant, Airteks Mechanical Services, Inc.,
is bound by a collective bargaining agreement and various trust agreements to
make timely contributions to plaintiff trust funds for covered work performed by
Airteks employees.   Declaration of Larry Blevins in Support of Motion for

1

Default Judgment, filed in C05-1758 SBA on August 8, 2005, ("Blevins Decl.") at ¶4 and Ex. A and D.  Defendant Jerome Bohland is an individual and an authorized representative of Airteks.  Blevins Decl., at Ex. D.

On June 24, 2004, plaintiffs filed a complaint against Airteks seeking to collect unpaid contributions due to multi-employer benefit plans and to obtain monthly reports pursuant to the governing collective bargaining agreement.  See, Complaint, C04-2531 SBA.  On December 22, 2004, plaintiffs filed a First Amended Complaint in Civil Action C04-2531 SBA, containing essentially the same allegations and adding Mr. Bohland as a defendant.

On April 27, 2005, plaintiffs filed a separate complaint commencing a new action, C05-1758 SBA.[1]  The 2005 complaint alleges that Airteks and Mr. Bohland refuse to submit to an audit as required by the collective bargaining agreement, asks the Court to compel defendants to comply with such an audit, and seeks a judgment for amounts found owing at the conclusion of the audit. Complaint C05-1758, at ¶9.[2]

Plaintiffs served defendants with a copy of each complaint.  Summons and Proofs of Service, filed in C04-2531 on July 28, 2004 and February 7, 2005; Summons and Proof of Service, filed in C05-1758 on May 30, 2005.  Defendants have not responded to any of the complaints.

In response to plaintiffs' applications for entry of default, the Clerk of the Court entered default as to Airteks with respect to Civil Action C04-2531 on April 25, 2005, and entered default as to Airteks with respect to Civil Action C05-1758 on July 5, 2005.

---

[1]This action originally was assigned to Judge White.  Eventually, however, the 2004 and 2005 actions were related and C05-1758 was reassigned to Judge Armstrong.

[2]For clarity, our citations to the record will include the case number for the action in which the cited document was filed.

1    As we read it, plaintiffs' application for entry of default in Civil Action
2    C04-2531 seeks entry of default only as to Airteks.  Appropriately, the Clerk
3    entered default only as to Airteks.  In contrast, in their application for entry of
4    default in Civil Action C05-1758 plaintiffs also requested default against Mr.
5    Bohland.  However, apparently as a result of administrative oversight, the Clerk
6    has <u>not</u> entered default as to Mr. Bohland in the 2005 action.
7    Plaintiffs filed and served a motion for default judgment in each action.
8    See, Motion for Default Judgment and Proof of Service, filed in C04-2531 on
9    September 16, 2005; Motion for Default Judgment and Proof of Service, filed in
10   C05-1758 on August 8, 2005.  Judge White referred plaintiffs' August 8th motion
11   to the undersigned.  On November 15, 2005, Judge Armstrong ruled that the two
12   actions were related.  She then referred plaintiffs' September 16th motion to the
13   undersigned. Order Referring Motion, filed November 28, 2005.
14   On December 1, 2005, this court ordered plaintiffs to file a consolidated
15   memorandum of points and authorities, *inter alia*, addressing all of the relief
16   sought via both actions.  Order re Related Motions for Default Judgment.  On
17   December 23, 2005, plaintiffs filed their Consolidated Points and Authorities in
18   Support of Motion for Default Judgment (hereafter " Consolidated Motion") and
19   additional supporting papers.
20   On January 18, 2006, this court conducted a hearing in connection with
21   plaintiffs' Consolidated Motion.  No appearance was made on defendants' behalf.[3]
22   In their Consolidated Motion, plaintiffs seek a judgment against Airteks and
23   Mr. Bohland in the amount $30,685.58 to recover unpaid contributions, liquidated
24   damages, interest, attorneys' fees and costs.  Plaintiffs also seek an order
25
26   [3]Before the District Court related these cases, the undersigned also conducted a hearing
27   on September 28, 2005, in C05-1758, in connection with plaintiff's August 8th motion for
     default judgment.  No appearance was made on defendants' behalf at the September 28th
28   hearing.

compelling defendants to produce monthly contribution reports**,** to submit to an audit of Airteks' payroll records, and to pay all additional amounts deemed owing by the auditor.

## I.   <u>Entitlement to Entry of Default Judgment</u>

Plaintiffs seek entry of judgment by default against the entity Airteks as well as against Mr. Bohland, individually.  Consolidated Motion at 2, n.1.

Plaintiffs served <u>Airteks</u> with their motions for default judgment.  See, Proof of Service, filed in C04-2531 on September 16, 2005; Proof of Service filed in C05-1758 on August 8, 2005; Proofs of Service filed in both actions on December 23, 2005; see also, Letter from plaintiffs' counsel, filed in C05-1758, on October 4, 2005.  Airteks has failed to respond, and the Clerk of the Court entered default as to this defendant.  Given Airtek's complete failure to appear and the significant risk of prejudice to the employee beneficiaries of the fringe benefit trusts when an employer fails to make the required contributions, the sufficiency of plaintiff's complaints, and the apparent merit of plaintiffs' substantive claims, we RECOMMEND that Judge Armstrong find that plaintiffs are entitled to judgment by default against Airteks Mechanical Services, Incorporated with respect to both actions.  See, F.R.C.P. 55(b); *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

The Clerk has not, however, entered default against <u>Mr. Bohland</u> in either action.  Therefore, we cannot recommend that Judge Armstrong enter judgment by default against Mr. Bohland, individually.  Plaintiffs represented on the record that, at this juncture, they wish to proceed with their Consolidated Motion as against Airteks. See, Transcript January 18, 2006, hearing; Transcript September 28, 2005, hearing in C05-1758.  By proceeding with this Consolidated Motion as against the entity only, plaintiffs have <u>not</u> waived any entitlements they may have

4

against Mr. Bohland individually.  *Id*.  We RECOMMEND that Judge Armstrong permit plaintiffs to reapply to the Clerk for entry of default as to Mr. Bohland if they choose, and if the Clerk enters default, to file a new consolidated motion for default judgment directed to Mr. Bohland, individually, at a later date.

We further RECOMMEND that Judge Armstrong expressly find and direct that it is appropriate to enter judgment against fewer than all defendants on the ground that there is "no just reason for delay" where, as here, employee beneficiaries of the fringe benefit trust funds may suffer irreparable damage if plaintiffs are delayed or unable to collect delinquent contributions owed to the funds and where Airteks and Mr. Bohland are likely to be one and the same. F.R.C.P. 54(b).

## II.    Specific Items of Relief Sought by Plaintiffs

Section 1132(g)(2) of ERISA provides that in an action for delinquent contributions

> in which a judgment in favor of the plan is awarded the court *shall* award the plan --
> (A)    the unpaid contributions,
> (B)    interest on the unpaid contributions,
> (C)    an amount equal to . . . (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D)    reasonable attorneys' fees and costs of the action . . ., and
> (E)    such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . ..

29 U.S.C. §1132(g)(2) emphasis added.

### A.    Unpaid contributions

Plaintiffs seek unpaid contributions known to be delinquent at this time in the amount $14,823.24, owing pursuant to the governing collective bargaining and trust agreements.  Consolidated Motion at 5; Declaration of Kim Biagi in Support

1  of Motion for Default Judgment, filed in C04-2531 on September 16, 2005,

2  ("Biagi Decl."), at ¶3 and Ex. A.

3       Defendant Airteks is the signatory to a Master Labor Agreement between

4  the union and Airteks' "bargaining agent," Northern California Mechanical

5  Contractors Association.  Blevins Decl., at Ex. A and D.  The collective

6  bargaining agreement incorporates applicable Trust Agreements, and signatories

7  agree to be bound by the terms of those agreements.  Blevins Decl., at Ex. A and

8  C.  The collective bargaining agreement governs employer contributions to the

9  various employee fringe benefit trust funds and obligates employers to pay

10  specified amounts into employee benefit funds on behalf of Airteks' employees

11  who perform covered work.  *Id*.

12       Airteks became a signatory to the collective bargaining agreement on

13  February 20, 2002.  Belvins Decl., at Ex. D.  Airteks has not invoked the

14  procedures that would release it from its obligations under that agreement.

15  Blevins Decl., at ¶4 and Ex. D; Transcript January 18, 2006, hearing.

16  Accordingly, Airteks is obligated to pay contributions for covered work conducted

17  by its employees for the period February 20, 2002, through the present.  *Id*., at ¶4

18  and Ex. A, B, C, and D.

19       Plaintiffs seek a judgment for unpaid contributions known to be delinquent

20  at this time, in the amount $14,823.24.[4]  Consolidated Motion at 5; Biagi Decl., at

21  ¶3.  According to plaintiffs, Airteks has not submitted monthly reports for the

22  months of June, August, November, and December of 2003.  Biagi Decl., at ¶3;

23  Consolidated Motion at 9.  However, based on earnings statements provided by an

24  Airteks' employee, Gabriel Minor, plaintiffs have determined that defendant owes

25  at least $14,823.24 for unpaid contributions for covered work done by Mr. Minor

26

27      [4]Plaintiffs seek two categories of unpaid contributions in their Consolidated Motion: (1) contributions that they have determined are delinquent at this time as a result of information obtained from an Airteks' employee and (2) contributions, if any, found to be delinquent as a

28  result of the requested audit.  In this section we address only the former.  We address the latter in section II.C.1, *infra*.

in 2003.  Biagi Decl., ¶3 and Ex. A.  Because such damages are supported by the evidence, we RECOMMEND that the District Court enter judgment against Airteks in the amount $14,823.24 for unpaid contributions known to be delinquent at this time.

Plaintiffs request that the Court enter the monetary judgment in the name of "UA Local 342 Joint Labor-Management Committee" ("JLM") and assert that JLM will distribute the amounts received pursuant to a "Joint Services Agreement."  Consolidated Motion at n.4; Declaration of John L. Anderson in Support of Consolidated Motion for Default Judgment, filed December 23, 2005 ("Anderson Decl.").  We have reviewed the evidence submitted by plaintiffs and find that the Joint Services Agreement compels JLM to distribute monies received as a result of a monetary judgment among the Trusts Funds in a particular order. We RECOMMEND that the District Court enter judgment in the name of JLM and order JLM to distribute the judgment pursuant to the terms of the Joint Services Agreement.

## B.    Interest and Liquidated Damages

Plaintiffs seek interest and liquidated damages relating to the unpaid contributions known to be delinquent at this time in the total amount $5,424.63. Consolidated Motion at 5; Biagi Decl., at ¶3.

### 1.    Interest

If the Court enters judgment in plaintiffs' favor for unpaid contributions, ERISA requires the Court to award plaintiffs "interest on the unpaid contributions."  29 U.S.C. §1132(g)(2)(B).

Plaintiffs seek interest on the delinquent contributions at the rate of 12%. Consolidated Motion at 3; FAC in C04-2531, at ¶11; Complaint in C05-1758, at ¶10.  Plaintiffs have submitted evidence that supports a finding that 12% is the

7

applicable interest rate under the Trust Agreements.  Blevins Decl., at ¶6 and Ex. C.[5]

ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan."  29 U.S.C. §1132(g)(2).  We, therefore, RECOMMEND that the District Judge grant plaintiffs' request for judgment for interest on the unpaid contributions at the rate of 12% on delinquent contributions from the date due through the date paid or, if as yet unpaid, through the date of judgment.

Plaintiffs' current interest calculation includes interest that has accrued through August 20, 2005.  Biagi Decl., at ¶3; Consolidated Motion at 5.  In the event Judge Armstrong adopts our recommendation, we also RECOMMEND that the Court permit plaintiffs to file an additional submission calculating interest through the date of judgment.

## 2.   Liquidated Damages

Plaintiffs seek liquidated damages at the contract rate of 20%.  Consolidated Motion at 3; FAC in C04-2531 at ¶11; Complaint in C05-1758, at ¶10; Blevins Decl., at ¶5 and Ex. C.

ERISA compels the court to award plaintiffs "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court [as unpaid contributions]."  29 U.S.C. §1132(g)(2)(C)(ii).  Liquidated damages are "mandatory and not discretionary" if "the following three requirements [are] satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Northwest Administrators, Inc.,*

---

[5]In support of their claims for interest and liquidated damages plaintiffs also reference a document called "Joint Services Agreement."  Because defendant is not a signatory to this document the rates for interest and liquidated damages therein cannot bind defendant.  The rates sought by plaintiffs are contained, nonetheless, in the Trust Agreements to which Airteks is bound.

1  *v. Albertson's Inc.,* 104 F.3d 253 (9th Cir. 1996) citing *Idaho Plumbers &*

2  *Pipefitters v. United Mechanical Contractors, Inc.,* 875 F.2d 212 (9th Cir. 1989).

3          With respect to the first requirement -- whether the employer was delinquent

4  at the time the action is filed -- we note that plaintiffs have filed three complaints

5  in these related actions.  Because the original complaint in C04-2351 named

6  Airteks as a defendant and because the 2004 and 2005 actions are essentially

7  identical, we RECOMMEND that Judge Armstrong find that the relevant

8  complaint for these purposes is the original complaint filed in C04-2531 on June

9  24, 2004.[6]  Plaintiffs have submitted evidence that supports a finding that there

10  were contributions that were delinquent and unpaid at the time plaintiffs filed their

11  first lawsuit on June 24, 2004, and that the collective bargaining agreement

12  together with Trust Agreements provide for an award of liquidated damages on

13  such sums at the rate of 20% where, as here, plaintiffs have filed a lawsuit to

14  collect delinquent contributions.  Biagi Decl., at 2; Blevins Decl., at ¶5 and Ex. A

15  and C.  Therefore, plaintiffs have satisfied the first and third *Northwest*

16  requirements.

17          If Judge Armstrong adopts our recommendation to enter judgment against

18  Airteks for unpaid contributions in the amount $14,823.24, plaintiffs will have

19  satisfied the second requirement.

20          We RECOMMEND that, if Judge Armstrong enters judgment against

21  Airteks for unpaid contributions known to be delinquent at this time, she also enter

22  judgment for liquidated damages in connection with the contributions that were

23  delinquent and unpaid as of June 24, 2004, the date plaintiffs filed lawsuit C04-

24  2531.[7]

25

26          [6]We make no recommendation at this time with respect to whether the same date would
apply in a motion for default judgment against Mr. Bohland, individually, where, as here, Mr.
27  Bohland was not named as a defendant until December 22, 2004.

28          [7]Plaintiffs are entitled to liquidated damages on these amounts even if Airteks paid those
contributions after the lawsuit was filed.  *Accord, Northwest*, 104 F.3d at 258.

9

3.     **Total Interest and Liquidated Damages on Unpaid Contributions**

For the reasons stated above, we RECOMMEND that the District Court enter judgment by default for interest on unpaid contributions known to be delinquent at this time at the rate of 12% through August 20, 2005, and liquidated damages relating to those unpaid contributions at the rate of 20% in the total amount $5,424.63.

We also RECOMMEND that Judge Armstrong permit plaintiffs to submit supplemental information setting forth the amount of interest that has accrued through the present (or through the date of judgment).

C.     **Request for Audit, Production of Monthly Reports, and Amounts Owing at Conclusion of Audit**

The collective bargaining agreement to which Airteks is a signatory governs employer contributions to the various employee fringe benefit trust funds and obligates employers to submit to the fringe benefit trust funds monthly reports documenting the number of hours worked by covered employees together with the monthly payments indicated as owing by each month's report. Blevins Decl., at Ex. A at 30. The governing Trust Agreements also obligate the employer to submit to an audit of its records for the purpose of determining whether the employer has paid the appropriate amount of contributions to the fringe benefit trusts. Blevins Decl., at ¶2 and Ex. C at 16-17.

Plaintiffs obtained documentation that at least one employee who was sent to Airteks out of the union hall performed covered work in 2003 for which Airteks did not submit reports or pay contributions. Biagi Decl., at ¶3 and Ex. A. Plaintiffs do not know whether covered work was performed for Airteks in 2004 and 2005. Airteks has submitted no reports for these years. Airteks has refused to

submit to an audit of its records as contemplated by the collective bargaining agreement.  Biagi Decl., at ¶ 3; Blevins Decl., at 5.

Airteks has breached the collective bargaining agreement by, *inter alia*, failing to submit monthly reports documenting the hours worked by covered employees and refusing to submit to an audit.  Biagi Decl., at ¶ 3; Blevins Decl., at 5.  Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate."  29 U.S.C. §1132(g)(2)(E).  Airteks' failure to accurately report Mr. Minor's work in 2003 supports plaintiffs' concern that Airteks may not have accurately reported covered work in other months and that Airteks may be withholding information that would demonstrate that covered work was completed in 2004 and/or 2005.  We think this justifies an audit that runs from February 20, 2002, the date Airteks became bound by the governing collective bargaining agreement, through the present.

We RECOMMEND that Judge Armstrong enter judgment compelling defendant Airteks to submit to an audit for the purpose of determining the amount of fringe benefit contributions owed for the period from February 20, 2002, through the present, and to provide relevant records requested by the auditor, including, without limitation, Airteks' monthly reports for June, August, November and December 2003 and for 2004 and 2005.

Plaintiffs also ask the Court to compel Airteks to pay contributions, interest and liquidated damages found owing as a result of the audit.

### 1.    Unpaid Contributions Found Owing at Conclusion of Audit

Plaintiffs' counsel represented that it is plaintiffs' practice to have the auditor send her full report in draft form to the employer.  The employer will then have thirty days to respond or to seek an extension of time in which to submit additional documentation for the auditor's consideration.  When the auditor's process is complete, she will send a final report to the employer and to the Board of

Trustees, which is composed of union <u>and</u> employer representatives.  The Board will provide Airteks with a second opportunity to present objections to the auditor's conclusions.  The Board then votes on the report.  Plaintiffs' counsel represented on the record that he would ensure that Airteks receives notice of the Board's proceedings.  See, Transcript of January 18, 2006, hearing; Transcript of September 28, 2005, hearing.

We RECOMMEND that Judge Armstrong enter judgment for the amount of unpaid contributions found owing as a result of the audit on the condition that Airteks receives notice of the auditor's findings and an opportunity to respond at a proceeding before the Board.

### 2.      <u>Interest Found Owing at Conclusion of the Audit</u>

For the reasons stated in section II.B.1 above, we RECOMMEND that the District Court find that plaintiffs are entitled to interest at the rate of 12% on unpaid contributions found owing at the conclusion of the audit from the date due until the date paid or until Court enters judgment on those amounts.

### 3.      <u>Liquidated Damages on Delinquent Contributions Found Owing from Audit</u>

Plaintiffs are entitled to mandatory liquidated damages under ERISA at the rate of 20% on contributions that were <u>unpaid</u> on June 24, 2004, (the date plaintiffs filed the first action).  Absent the audit, plaintiffs cannot identify with certainty which, if any, of the remaining contributions were delinquent <u>and unpaid</u> as of June 24, 2004.

For the purposes of determining whether plaintiffs are entitled to liquidated damages on contributions found delinquent as a result of the audit, and if so, the amount of any such liquidated damages, we group potentially delinquent

contributions into three categories: (1) contributions that had become delinquent but that defendant <u>paid before</u> plaintiffs filed the first complaint, (2) contributions that were both late and <u>un</u>paid at the time that complaint was filed, and (3) contributions that came <u>due after</u> that complaint was filed, became delinquent, and either were paid <u>late</u> or remain unpaid.

### a.   Liquidated Damages on Contributions That Were Delinquent and *Unpaid* at the Time Plaintiffs Filed the First Lawsuit

For the reasons stated in section II.B.2, we RECOMMEND that, if Judge Armstrong enters judgment against Airteks for unpaid contributions found owing at the conclusion of the audit, she also enter judgment for statutory liquidated damages at the rate of 20% in connection with those contributions that were delinquent and unpaid at the time plaintiffs first filed the lawsuit C04-2531 -- on June 24, 2004.

### b.   Liquidated Damages on Contributions That Became Delinquent *after* Plaintiffs Filed the First Lawsuit

The Ninth Circuit has not yet ruled with respect to whether plaintiffs can recover <u>statutory</u> liquidated damages in connection with contributions that matured <u>after</u> suit was filed where defendant was delinquent with respect to <u>other</u> contributions at the time suit was filed.  There has been a split among the lower courts of this District on this issue.

In *Board of Trustees v. Udovch*, 771 F.Supp. 1044 (N.D.Cal 1991), the undersigned held that the Ninth Circuit's opinion in *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796 (9th Cir. 1990), required the court to deny recovery of statutory liquidated damages on contributions that had not matured at the time suit was filed.  We have since been persuaded by the reasoning set forth in *Board of*

*Trustees v. Bridon*, 1995 WL 573701 (N.D. Cal 1995), that it is impractical and counterproductive to apply rigidly *Parkhurst*'s broad statements to the circumstances before us, circumstances not considered by the Ninth Circuit in *Parkhurst*.  Therefore, we RECOMMEND that Judge Armstrong follow cases such as *Bridon* and *Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F.Supp. 1398 (N.D.Cal. 1992), which adopt the more practical approach and award <u>statutory</u> liquidated damages at the rate of 20% on contributions that came due and became delinquent after plaintiffs filed their original complaint on June 24, 2004.

### c. <u>Liquidated Damages on Contributions That Became Delinquent but Were *Paid* Before Plaintiffs Filed the First Lawsuit</u>

If Airteks was delinquent with respect to contributions but <u>paid</u> those contributions <u>before</u> plaintiffs filed the first complaint on June 24, 2004, plaintiffs are <u>not</u> entitled to <u>statutory</u> liquidated damages on those contributions.  Plaintiffs might, however, be entitled to liquidated damages as a matter of <u>contract</u>.  *Idaho Plumbers*, 875 F.2d at 217 (§1132(g)(2) does not preempt the federal common law of liquidated damages when that section does not apply); *Board of Trustees v. Udovch*, 771 F.Supp. 1044 (N.D. Cal 1991).

A contractual "liquidated damages provision is enforceable in this setting, and not void as a penalty, only if (1) 'the harm caused by a breach [is] very difficult or impossible to estimate' and (2) the fixed amount is 'a reasonable forecast of just compensation for the harm caused.'" *Udovch*, 771 F.Supp. at 1048 citing *Idaho Plumbers*, 875 F.2d at 217.

We RECOMMEND that Judge Armstrong find that plaintiffs have satisfied the first prong of the test.  As stated in *Udovch* "[w]hen an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge."  771 F. Supp. at 1049.

With respect to the second prong of the test, whether the fixed amount represents a reasonable forecast for the harm caused, we focus on the "parties' intentions." *Udovch*, 771 F. Supp. at 1048.  The negotiating parties "must make a good faith attempt to set an amount equivalent to the damages they anticipate." *Idaho Plumbers*, 875 F.2d at 217.  For the reasons explained in *Udovch* we focus "on the character of the process that led, at the time the contract language was drafted, to the fixing of the liquidated damages figures or formulas." 771 F.Supp. at 1048.  We look for evidence that "the drafters made a good faith effort to determine that there would be a rational relationship between the damages that would be paid under the clause and the harms that would be suffered *in most of the situations that were reasonably foreseeable*." 771 F. Supp. at 1049 (emphasis in original).  More specifically, we look for evidence:

> (1) that the drafters gave some thought to the kinds of harms that the liquidated damages provision would embrace, (2) that other more direct provisions were not made for compensation for at least the bulk of the harms intended to be so embraced, and (3) that it was not obvious, at the time of drafting, that the figure or formula selected would result, in a substantial percentage of instances in which it might be triggered, in amounts of money flowing from defendants to plaintiffs that clearly would be larger than necessary to compensate for the kinds of harms the plaintiffs were likely to in fact suffer.

*Udovch*, 771 F.Supp. at 1048.  Plaintiffs may not receive <u>contractual</u> liquidated damages if such damages would constitute nothing more than a "penalty."

Under the Trust Agreements, liquidated damages initially are charged at the rate of 10% of any unpaid amount or $100.00, whichever is greater, plus interest. Blevins Decl., at Ex. C (Trust Agreement) at 14.  The representative Trust Agreement submitted by plaintiffs identifies some kinds of harms that the liquidated damages would embrace, such as loss of return on investment, inability to pay benefits, and collection expenses, indicating that the drafters gave some thought to the kinds of harms the liquidated damages provisions would embrace. Blevins Decl., at Ex. C (Trust Agreement) at 14.  Also, this provision of the Trust Agreement seems to cap liquidated damages at $500.00 (presumably per

occurrence – *i.e.,* per month that contributions are delinquent).  Blevins Decl., at Ex. C (Trust Agreement at 14-15) ("In no event, however, shall the liquidated damages exceed $500.00.").  As we read the Agreement, this cap applies only until such time as plaintiffs find it necessary to file a legal action to collect the delinquency.  This cap represents a reasonable attempt to limit liquidated damages during the period before the expense of trying to collect increases substantially with the initiation of litigation.

As a separate matter, we note that, as a general rule, full compensation requires payment of interest on the sums 'lost.'  It follows that the provision for interest on liquidated damages constitutes a reasonable attempt to compensate plaintiffs, not a penalty.

We RECOMMEND that Judge Armstrong find that the liquidated damages provision at the rate of 10% per month (but not less than $100.00), with a $500.00 per occurrence cap, plus interest, constitutes a "reasonable forecast of just compensation for the harm caused." *Idaho Plumbers*, 875 F.2d at 217.

If plaintiffs are required (by defendant's unresponsiveness) to file a legal action to collect the delinquency the contract provides that liquidated damages are to increase to 20%.  Blevins Decl., at Ex. C.  By the terms of the Trust Agreement, this 20% liquidated damages provision applies only to "[c]ontributions still unpaid on the date the legal action is filed."  Blevins Decl., at Ex. C (Trust Agreement) at 15 (emphasis added).  Liquidated damages on such contributions would be mandatory under ERISA.  See, *supra*.  In light of this limiting language, plaintiffs do not appear to seek 20% contractual liquidated damages on contributions delinquent but paid before the legal action was filed.  If, however, plaintiffs were to

16

request liquidated damages at the rate of 20% on such contributions we would RECOMMEND that Judge Armstrong deny the request.[8]

For these reasons, if the audit reveals that Airteks was delinquent with respect to fringe benefit contributions but that Airteks paid those contributions before June 24, 2004, we RECOMMEND that Judge Armstrong award liquidated damages on these delinquent contributions pursuant to the contract at the rate of 10% of the delinquent contributions (but not less than $100.00) with a monthly occurrence cap of $500.00, plus interest.

### d.   Recommendation

We RECOMMEND that the District Court order Airteks to pay liquidated damages on contributions found delinquent at the conclusion of the audit consistent with paragraphs (a)-(c) above.

### D.   Attorneys' Fees and Costs

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought.  29 U.S.C. §1132(g)(2)(D); *Northwest Administrators*, 104 F.3d at 258.

---

[8]The submitted Agreement does not identify any <u>additional</u> damages that would be difficult to assess and that would occasion the need for the <u>additional</u> 10%.  Moreover, the collective bargaining agreement and the Trust Agreement provide that plaintiffs are entitled to reimbursement of attorneys' fees and other costs.  Blevins Decl., at Ex. A (Master Agreement) at 31 (if plaintiffs must consult counsel they are entitled to "reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim") and Ex. C (Trust Agreement) at 14.  The provision for attorneys' fees and costs appears to capture the obvious additional costs incurred if plaintiffs must file a legal action. At this juncture, there is no indication in the Agreement or supporting declarations about what other (non-obvious) kinds of damages might be occasioned by the need to file a legal action. Nor does the Agreement suggest why any such additional damages would be difficult to assess. Because other, more direct provisions were made for compensation for the bulk of harms intended to be embraced by an additional 10%, in our view, plaintiffs have not yet justified an additional 10% which, based on the evidence before us, would be nothing more than a "penalty."

17

Plaintiffs seek reimbursement of attorneys' fees and costs in the amount $10,437.71.  Consolidated Motion at 6; Declaration of Scott M. DeNardo in Support of Consolidated Motion for Default Judgment, filed December 23, 2005 ("Consolidated De Nardo Decl."), at 3.[9]

### 1.   Tasks Conducted and Number of Hours Spent on Those Tasks

Plaintiffs seek fees in connection with tasks such as drafting and filing the complaints, requesting default, and the instant Consolidated Motion.  See, Exhibits to C04-2531 and C05-1758 DeNardo Decl. and to Consolidated DeNardo Decl., and to October 4, 2005, letter on file in C05-1758.

In its Order re Related Motions for Default Judgment, filed December 1, 2005, this court notified plaintiffs that it was disinclined to recommend that the District Court award reimbursement of fees that could have been avoided by amending the 2004 complaint for damages rather than filing a separate action for an audit in 2005.  In response, plaintiffs' counsel eliminated from plaintiffs' fee request hours that, in his judgment, were duplicative or otherwise excessive or unnecessary.  Consolidated De Nardo Decl., at ¶4-5.  Accordingly, the instant fee request does not seek recovery for <u>all</u> work conducted by counsel in connection with both actions.

We have reviewed counsel's revised billing statements and RECOMMEND that the District court find that the kinds of tasks conducted by counsel were reasonably undertaken.  We also RECOMMEND that the District Court find that counsel expended a reasonable number of hours completing those tasks for which compensation is warranted.

---

[9]See also, C04-2531 Declaration of Scott M. DeNardo in Support of Motion for Entry of Default Judgment, filed September 16, 2005 ("C04-2531 De Nardo Decl."); C05-1758 Declaration of Scott M. De Nardo in Support of Motion for Default Judgment, ("C05-1758 De Nardo Decl.") at ¶¶2-3; Letter and attachments, filed in C05-1758 on October 4, 2005.

1

### 2. **Hourly Rates**

2      Plaintiffs seek reimbursement of their attorneys' time at the rates of $185,

3  $195, and $225 per hour for Mr. DeNardo, $215 and $255 per hour for Mr. Lynn,

4  and $85 and $125 per hour for Mr. Lunch, a law clerk.  Consolidated DeNardo

5  Decl., at ¶2.  Mr. Lunch is a third year law student at Hastings College of the Law

6  and did the same kind of work as would a paralegal.  Consolidated DeNardo Decl.,

7  at 3; Transcript of September 28, 2005, hearing.

8      Mr. De Nardo's and Mr. Lynn's billing rates are commensurate with the

9  prevailing market rate in the Bay Area for lawyers of counsel's skill and experience

10  doing the kind of work these matters involved.  We RECOMMEND that Judge

11  Armstrong approve these hourly rates.

12      When we turn to the rates charged for work by Mr. Lunch, the paralegal, we

13  confront a slightly more complicated situation.  Plaintiffs seek reimbursement for

14  paralegal work at two different rates: $85 per hour and $125 per hour.  The $85 per

15  hour figure is within the range of reasonable market rates in the Bay Area for work

16  by a paralegal in a setting like this.  It follows that we RECOMMEND that Judge

17  Armstrong approve plaintiffs' request for compensation for the hours devoted to

18  this matter by Mr. Lunch that were billed at $85 per hour.  However, plaintiffs have

19  failed to justify the $125 per hour rate for the remainder of the work done by Mr.

20  Lunch.  Having reviewed requests for fees in many cases of this kind, the court is

21  well-positioned to take judicial notice of the fact that the going local market rate

22  for work of this kind by paralegals does not exceed $95 per hour.  We therefore

23  RECOMMEND that Judge Armstrong approve compensation at a rate of $95 per

24  hour for those paralegal hours for which plaintiffs seek compensation at $125 per

25  hour.  If Judge Armstrong accepts this recommendation, she will reduce plaintiffs'

26  fees by $183.00 – as Mr. Lunch billed 6.1 hours at the $125 per hour rate.

27  //

28  //

### 3. <u>Costs</u>

Plaintiffs also seek costs in the amount of $596.71.[10]  Consolidated DeNardo Decl., at 4 and 5.  Plaintiffs' costs consist of this Court's filing fee, the cost of service of each Summons and Complaint and other papers filed in this action, photocopies and postage. See, all De Nardo Declarations and exhibits thereto.  The items for which reimbursement is sought constitute taxable costs and/or out-of-pocket expenses normally chargeable to the client.  Civil L.R. 54-3. *Accord*, *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) (fee award under 42 U.S.C. §1988).  The amounts expended were reasonable.  We, therefore, RECOMMEND that Judge Armstrong grant plaintiffs' request for costs in the amount $596.71.

### 4. <u>Recommendation</u>

For the reasons set forth above, if Judge Armstrong adopts this court's recommendation to enter judgment in favor of plaintiffs on their claim for unpaid contributions, we RECOMMEND that Judge Armstrong award plaintiffs costs and fees in the amount $10,254.71.[11]

### E. <u>Post judgment interest</u>

In their Consolidated Motion plaintiffs seek post judgment interest from August 20, 2005.  Consolidated Motion at 5.  However, plaintiffs set forth no authority or evidence that would support a finding that they are entitled to post-judgment interest, or if so, the rate to which they are entitled.  Moreover, there is no basis for a finding that <u>post-judgment</u> interest should accrue from August 20, 2005.

---

[10]This amount does not include costs that counsel, in the exercise of his billing judgment, eliminated from the fee request.  Consolidated DeNardo Decl., at 4.

[11]The total sought ($10,437.71) minus $183.00 for the reduction to Mr. Lunch's billing rate.

20

Plaintiffs have opted not to pursue post-judgment interest at this time.  See, Transcript of January 18, 2006, hearing.  By doing so, plaintiffs do not waive their right to seek post-judgment interest at a later date.  *Id.*

We RECOMMEND that the District Court not address at this time whether plaintiffs are entitled to post-judgment interest and, if so, the amount.  We also RECOMMEND that Judge Armstrong not preclude plaintiffs from requesting post-judgment interest after Judge Armstrong enters a final judgment.

## III.   Conclusion

For the reasons stated above, we RECOMMEND that Judge Armstrong enter judgment in plaintiffs' favor and against Airteks for unpaid contributions known to be delinquent at this time, interest through August 20, 2005, liquidated damages, attorneys' fees and costs in the amount $30,502.58 plus interest from August 21, 2005, through the date of judgment according to proof**.**  Additionally, we RECOMMEND that the monetary judgment be entered in favor of U.A. Local 342 Joint Labor-Management Committee and that the Court order the JLM to distribute recovered sums pursuant to the Joint Services Agreement.

We further RECOMMEND that Judge Armstrong enter an order compelling Airteks to submit to an audit for the purpose of determining the amount of fringe benefit contributions owed for the period from February 20, 2002, through the present, and to provide relevant records requested by the auditor, including, but not limited to, Airteks' monthly reports for June, August, November and December 2003 as well as for 2004 and 2005.

Following completion of an audit procedure in which Airteks is permitted to participate, we RECOMMEND that Judge Armstrong enter judgment by default in favor of plaintiffs and against Airteks for unpaid contributions as determined by the audit, interest at the rate of 12%, and statutory and/or contractual liquidated damages according to proof.

21

We further RECOMMEND that Judge Armstrong decline to enter judgment as to Jerome Bohland, individually, at this time.

A copy of this court's Proposed Judgment is attached hereto.

**The Court ORDERS plaintiffs to serve a copy of this Report and Recommendation on defendants immediately.**

IT IS SO REPORTED AND RECOMMENDED.

Dated: January 18, 2006

/s/  Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
Plaintiffs with direction to serve defendants,
SBA,  wdb, stats

22